**UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| AMY TERRELL PAYTON,<br>　　　　　　Appellant, | DOCKET NUMBER<br>AT-1221-16-0592-W-1 |
| 　　　　v. | |
| DEPARTMENT OF VETERANS<br>　AFFAIRS,<br>　　　　　　Agency. | DATE: July 21, 2023 |

# THIS ORDER IS NONPRECEDENTIAL[1]

Amy Terrell Payton, Gulfport, Mississippi, pro se.

Alyssa W. Silberman, Esquire and Johnston B. Walker, Esquire, Jackson,
　Mississippi, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## REMAND ORDER

The appellant has filed a petition for review of the initial decision, which dismissed her individual right of action (IRA) appeal on the basis that she failed to make a protected disclosure. For the reasons discussed below, we GRANT the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

appellant's petition for review. We MODIFY the initial decision to find that the appellant established jurisdiction over her claims of retaliation for her disclosure about sexual assault by the union president and for her prior Board appeal and that she did not establish jurisdiction over her alleged disclosure about a lock to the dementia unit. We VACATE the initial decision's finding that the appellant failed to make a protected disclosure when she stated that the union president sexually assaulted her and that she failed to engage in protected activity when she filed a prior Board appeal and REMAND the case to the regional office for a determination of whether the agency proved by clear and convincing evidence that it would have reassigned the appellant and removed her absent her protected disclosure and activity.

### BACKGROUND

¶2 The appellant was employed as a Nursing Assistant. *Payton v. Department of Veterans Affairs*, MSPB Docket No. AT-0752-14-0055-I-1, Initial Appeal File (0055 IAF), Tab 4 at 9. On June 13, 2013, the agency proposed her removal on the basis of the following charges: (1) endangering the safety of a veteran when she failed to secure a padlock on the exit of an agency facility unit thus leading to the escape of a dementia patient; (2) leaving her work area through the gate; and (3) two specifications of lack of candor when she told the Charge Nurse that she had led the patient to the pier, despite the fact that he had escaped, and when she prepared a written statement about the incident indicating that the patient had not escaped. *Id*. at 27-30. After considering the appellant's reply, the deciding official sustained the charges and imposed the removal, effective August 24, 2013. *Id*. at 15-24.

¶3 On September 20, 2013, the appellant filed a Board appeal challenging the removal and requested a hearing. 0055 IAF, Tab 1. On August 28, 2014, after conducting the appellant's requested hearing, the administrative judge issued an initial decision that sustained the removal. 0055 IAF, Tab 29, Initial Decision

(0055 ID). He sustained only charges 1 and 3 and found a nexus between the charged misconduct and the efficiency of the service. 0055 ID at 4-11. He also found that, under the standard set forth in *Warren v. Department of the Army*, 804 F.2d 654, 656–58 (Fed. Cir. 1986), the appellant failed to prove her affirmative defenses of whistleblower[2] retaliation for reporting allegations of sexual assault to the equal employment opportunity (EEO) office and gender discrimination on the basis of her allegations about the union president. 0055 ID at 18-19. Additionally, he found that the agency did not commit a due process violation or harmful error by considering ex parte information not contained in the proposal. 0055 ID at 20. He found that the chosen penalty was reasonable and thus he sustained the removal. 0055 ID at 11-16, 20.

¶4    The Board considered the appellant's petition for review and did not sustain the removal, finding that the agency violated her due process rights by considering aggravating factors that were not contained in the proposal. *Payton v. Department of Veterans Affairs*, MSPB Docket No. AT-0752-14-0055-I-1, Final Order (0055 Final Order), ¶¶ 4-10 (Jan. 29, 2015). However, the Board agreed with the administrative judge that the appellant failed to prove her affirmative defenses of retaliation for her accusations against the union president and gender discrimination. *Id*., ¶¶ 11-13.

¶5    On April 8, 2013, prior to the first proposed removal, the appellant had reported to an agency psychologist that the union president had sexually assaulted her. The psychologist referred her to the EEO office. *Payton v. Department of Veterans Affairs*, MSPB Docket No. AT-1221-16-0592-W-1, Initial Appeal File (0592 IAF), Tab 17 at 26, 37. On April 9, 2013, the EEO manager referred the appellant's complaint to the agency's police department, which interviewed her

---

[2] The *Warren* standard is not applicable to whistleblower claims under 5 U.S.C. § 2302(b)(9). Thus, to the extent the administrative judge considered the appellant's claim as such, it should have been analyzed under the standard set forth in 5 U.S.C. § 1221(e). *See Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 15 (2015).

on April 11, 2013. *Id.* The police and the Office of Inspector General (OIG) continued the investigation. *Id.* at 29.

¶6      The appellant had an initial EEO interview regarding the sexual harassment and assault on May 14, 2013, and a mediation with the Associate Nurse Executive, who was the proposing official during the first removal action, on June 11, 2013. *Id.* at 9-11, 36-38; 0592 IAF, Tab 15 at 4. Shortly after the mediation, the agency proposed the removal on June 13, 2013, and imposed the removal, effective August 24, 2013. 0055 IAF, Tab 4 at 15-30.

¶7      On February 6, 2014, after the appellant had initiated her Board appeal on September 20, 2013, the Medical Center Director, who served as the deciding official in both removal actions, authorized an investigation into the appellant's allegations of sexual harassment and assault by the union president. 0592 IAF, Tab 17 at 22. The investigation was conducted from February 11-12, 2014. *Id.* On May 9, 2014, the agency's Administrative Investigation Board (AIB) issued a report of investigation finding that the union president had committed the criminal offense of sexual assault and that the EEO manager and others should have pursued the issue as a criminal offense but failed to do so. *Id.* at 22-30. In rendering its decision, the AIB considered the appellant's testimony and evidence of her report to the OIG. *Id.* In response, on July 18, 2014, the deciding official issued a letter to the union president stating that, after reviewing the AIB report, he found that the accusations against the union president were unsubstantiated but that he should treat all persons with respect, refrain from conduct that is undignified and discourteous, and not make remarks of a disparaging and demeaning nature. *Id.* at 32.

¶8      The administrative judge issued the first initial decision on August 28, 2014, and the Board issued its Final Order on January 29, 2015, not sustaining the removal. 0055 ID; 0055 Final Order. On May 6, 2015, the first proposing official issued the appellant a letter changing her work assignment to a position that did not involve patient care pending review of an incident that occurred on

October 20, 2012,[3] for which she was suspended for 7 days.[4] 0592 IAF, Tab 6 at 22, 35-53. On May 15, 2015, the proposing official proposed to remove the appellant on the basis of charges 1 and 3 from the previously imposed removal.[5] *Payton v. Department of Veterans Affairs*, MSPB Docket No. AT-0752-14-0055-C-1, Compliance File (CF), Tab 1 at 11-15. The agency rescinded its proposal on September 9, 2015, and, on that same date, a new proposing official, the Associate Director of Patient Care Services, proposed the appellant's removal on the basis of the same charges. CF, Tab 12 at 11-14. On November 2, 2015, the deciding official imposed the removal again, effective November 13, 2015. 0592 IAF, Tab 6 at 12-15.

¶9 The appellant had initially filed a complaint with the Office of Special Counsel (OSC) on October 9, 2015, prior to the issuance of the removal decision. 0592 IAF, Tab 1 at 11, 39. On February 18, 2016, OSC made the preliminary determination to close out its investigation and, on March 31, 2016, after considering the appellant's additional submissions, issued its closeout letter finding that the appellant failed to demonstrate whistleblower retaliation.[6]

---

[3] The reassignment letter states that the incident occurred on October 2, 2012, but the proposal to suspend the appellant states that the incident occurred on October 20, 2012. 0592 IAF, Tab 6 at 26, 38-40.

[4] The appellant was charged with failure to follow instructions and conduct unbecoming a Federal employee when she refused to assist residents with their meals and screamed at agency officials. 0592 IAF, Tab 6 at 35-39. The agency initially proposed a 14-day suspension but then mitigated the suspension to a 7-day suspension that was imposed from April 8-14, 2013. *Id*. at 35-39.

[5] On May 26, 2015, the *Daily Caller* published an article about the agency's actions regarding the union president entitled, "Federal Union Leader at VA Gets Official Hand Slap for Sexual Assault." 0592 IAF, Tab 17 at 33-35. In particular, the article quoted the AIB findings, cited the deciding official's letter to the union president, and quoted a hospital spokeswoman who declined to comment on the deciding official's letter and stated that the AIB's findings do not dictate the agency's discipline. *Id*.

[6] OSC also stated that it did not have the authority to consider the appellant's claims of "double jeopardy" or that her removal was contrary to law. 0592 IAF, Tab 17 at 40, 48.

0592 IAF, Tab 17 at 39-48. OSC considered the appellant's assertion that she was removed in 2013 and 2015 in retaliation for filing an EEO complaint regarding the union president's sexual assault but stated that it would defer such allegations to the EEO process. *Id*. at 39-40, 45. OSC also considered the appellant's allegations that the agency reassigned her duties and removed her in retaliation for disclosing issues with the gate lock and for filing a prior Board appeal regarding her previous removal. *Id*. at 45-47. OSC found that, although these constituted a protected disclosure and protected activity of which agency officials were aware, there was no evidence that the agency's actions were pretext for reprisal.[7]

¶10 The appellant then filed the instant IRA appeal. 0592 IAF, Tab 1. After holding the appellant's requested hearing, the administrative judge denied her request for corrective action, finding that she failed to demonstrate that she disclosed the issues with the lock on the gate to an agency official and that she did not engage in protected activity because the Board does not have jurisdiction over EEO matters in an IRA appeal and her prior Board appeal did not concern whistleblower retaliation. 0592 IAF, Tab 31, Initial Decision (0592 ID) at 3-8.

¶11 The appellant has filed a petition for review and the agency has responded in opposition to her petition. Petition for Review (PFR) File, Tabs 1, 3.

---

[7] OSC found that the appellant was prohibited from challenging the first removal because she had previously filed a Board appeal regarding the same action. 0592 IAF, Tab 17 at 47. We agree. 5 U.S.C. § 7121(g) (stating that an employee may elect no more than one of the following remedies: a direct appeal to the Board; a negotiated grievance procedure pursuant to 5 U.S.C. § 7121; or a request for corrective action with OSC, potentially to be followed by an IRA appeal to the Board); *see Sherman v. Department of Homeland Security*, 122 M.S.P.R. 644, ¶ 13 (2015) (finding that the appellant's election to grieve his fiscal year performance evaluation foreclosed the Board's jurisdiction over his IRA appeal regarding the evaluation).

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The appellant has established jurisdiction over her claims of whistleblower retaliation for her disclosure about the union president and for filing her prior Board appeal but not her alleged disclosure about the gate lock.</u>

¶12     The appellant may establish jurisdiction over this IRA appeal if she demonstrates that she exhausted her administrative remedy before OSC[8] and makes nonfrivolous allegations of the following:  (1) she made a protected disclosure under 5 U.S.C. § 2302(b)(8) or engaged in protected activity under 5 U.S.C. §2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or activity was a contributing factor in the agency's decision to take or fail to take a personnel action.[9] 5 U.S.C. §§ 1214(a)(3), 1221(e)(1); *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001); *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016).

¶13     If an appellant establishes jurisdiction over her IRA appeal, she is entitled to a hearing on the merits of her claim, which she must prove by preponderant evidence.[10] *Salerno*, 123 M.S.P.R. 230, ¶ 5.  If she proves that her protected disclosure or activity was a contributing factor in a personnel action taken against her, the agency is given an opportunity to prove, by clear and convincing

---

[8] It is undisputed that the appellant exhausted her administrative remedy before OSC, as she filed an OSC complaint and OSC issued its closeout letter on March 31, 2016.  0592 IAF, Tab 17 at 39-48.  OSC's correspondence reflects that the appellant exhausted her claims that the agency retaliated against her for reports about the union president's sexual assault, her disclosure about the gate lock, and her prior Board appeal in which she had asserted an affirmative defense of whistleblower retaliation.  *Id*.

[9] A nonfrivolous allegation is an assertion that, if proven, could establish the matter at issue.  *Lewis v. Department of Defense*, 123 M.S.P.R. 255, ¶ 7 (2016); 5 C.F.R. § 1201.4(s).  An allegation generally will be considered nonfrivolous when, if an individual makes such an allegation under oath or penalty of perjury, it is more than conclusory, plausible on its face, and material to the legal issues in the appeal.  *Lewis*, 123 M.S.P.R. 255, ¶ 7; 5 C.F.R. § 1201.4(s).

[10] A preponderance of the evidence is that degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue.  5 C.F.R. § 1201.4(q).

evidence, that it would have taken the same personnel action in the absence of the protected disclosure or activity. 5 U.S.C. § 1221(e)(1)-(2); *Carr v. Social Security Administration*, 185 F.3d 1318, 1322–23 (Fed. Cir. 1999); *see Salerno*, 123 M.S.P.R. 230, ¶ 5.[11]

¶14 Before addressing the merits of an IRA appeal, the Board is required to determine first whether all jurisdictional requirements have been met. *McCarty v. Environmental Protection Agency*, 105 M.S.P.R. 74, ¶ 7 (2007); *see El v. Department of Commerce*, 123 M.S.P.R. 76, ¶ 13 (2015), *aff'd*, 663 F. App'x 921 (Fed. Cir. 2016). However, by holding a hearing, an administrative judge makes an implicit finding that an employee made at least one nonfrivolous allegation that she made a protected disclosure that was a contributing factor in the agency's decision to take or fail to take at least one personnel action. *See Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 15 (2015).

¶15 Although the administrative judge held a hearing, he did not make specific findings as to each disclosure and activity and thus we do so here. We modify the initial decision to first find that the appellant did not nonfrivolously allege that she disclosed a substantial and specific danger of public health and safety about problems with the gate lock in the dementia unit, but did nonfrivolously allege that she disclosed a violation of a law, rule, or regulation when she disclosed that the union president assaulted her. We also modify the initial decision to find jurisdiction over her claim that she engaged in protected activity when she filed her prior Board appeal.

---

[11] The Federal Circuit decided *Carr* prior to the enactment of the Whistleblower Protection Enhancement Act of 2012, Pub. L. No. 112-199, 126 Stat. 1465. However, subsequent changes in the law do not affect the relevant holding.

<u>The appellant failed to establish jurisdiction over her alleged disclosure about the gate to the dementia unit.</u>

¶16    We find that the appellant failed to nonfrivolously allege that she made a protected disclosure of a substantial and specific danger to public health and safety.  A protected disclosure is a disclosure of information that the appellant reasonably believes evidences any violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.  5 U.S.C. § 2302(b)(8); *Bradley v. Department of Homeland Security*, 123 M.S.P.R. 547, ¶ 7 (2016).  The proper test for determining whether an employee had a reasonable belief that her disclosures were protected is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the disclosure evidenced one of the circumstances described in 5 U.S.C. § 2302(b)(8).  *Bradley*, 123 M.S.P.R. 547, ¶ 7.

¶17    Before OSC, the appellant asserted that she disclosed concerns to her supervisors about the lock on the gate of the dementia unit, which could constitute a disclosure of a substantial and specific danger to public health and safety.  0592 IAF, Tab 1, Tab 17 at 45; *see Chambers v. Department of the Interior*, 602 F.3d 1370, 1376 (Fed. Cir. 2010) (explaining that to determine whether the appellant has made a disclosure that is sufficiently substantial and specific, the Board will consider the likelihood of the harm, when the alleged harm will occur, and the nature of the harm, i.e., its potential consequences); *see also Aquino v. Department of Homeland Security*, 121 M.S.P.R. 35, ¶ 13 (2014).  However, we agree with the administrative judge that the appellant failed to present any evidence that she in fact made the disclosure.  0592 ID at 4-6.[12]  Accordingly, we find that the appellant has failed to establish jurisdiction over

[12] In addition, as the administrative judge notes, the appellant testified at the hearing that she did not believe the gate was a factor in her removal.  0592 ID at 6 (citing Hearing Recording at 2:13:10-33 and 2:14:55-59 (testimony of the appellant)).

this alleged disclosure.  *See El*, 123 M.S.P.R. 76, ¶ 6 (stating that vague, conclusory, unsupported, and pro forma allegations of alleged wrongdoing do not meet the nonfrivolous pleading standard); 5 C.F.R. § 1201.4(s).

We modify the initial decision to find that the appellant participated in protected activity when she filed her prior Board appeal.

¶18  Pursuant to 5 U.S.C. § 2302(b)(9)(A)(i), an appellant engages in protected activity when she "exercise[s] . . . any appeal, complaint, or grievance right granted by any law, rule, or regulation with regard to remedying a violation of [5 U.S.C. 2302(b)(8)]." *Graves v. Department of Veterans Affairs*, 123 M.S.P.R. 434, ¶ 18 (2016).  The administrative judge found that the appellant's prior Board appeal did not involve a claim of whistleblower retaliation and thus did not constitute protected activity.  0592 ID at 8.  However, in that prior decision, the administrative judge stated that the appellant had asserted an affirmative defense of whistleblower retaliation when she alleged that the agency removed her in retaliation for reporting sexual assault by the union president to the EEO office.[13] 0055 ID at 16-18.  We find that, even if her claim was not successful, she had asserted an affirmative defense of whistleblower retaliation, and thus her Board appeal constituted protected activity under 5 U.S.C. § 2302(b)(9)(A)(i). Accordingly, we find that the appellant's prior Board appeal constituted protected activity.  *See Elder v. Department of the Air Force*, 124 M.S.P.R. 12, ¶ 40 (2016) (stating that the appellant's claim that the agency's removal action was taken in retaliation for his prior Board appeal, in which he had raised an affirmative defense under 5 U.S.C. § 2302(b)(8), and two separate petitions for enforcement should be analyzed under 5 U.S.C. § 2302(b)(9)(A)(i)).

---

[13] The decision considered the appellant's allegation under the standard set forth in *Warren*, 804 F.2d at 656-58, and found that, even if the appellant made a protected disclosure and the deciding official was aware of the disclosure, the deciding official's decision failed to raise even the inference of retaliation and there was no nexus between any alleged retaliation and the adverse action.  0055 ID at 16-18.

<u>The appellant made a protected disclosure of a violation of law, rule, or regulation when she disclosed that the union president sexually assaulted her.</u>

¶19    The administrative judge found that the appellant's activity regarding the union president within the EEO process was not protected because filing an EEO complaint is not protected activity.  0592 ID at 6-7; *see Applewhite v. Equal Employment Opportunity Commission*, 94 M.S.P.R. 300, ¶ 13 (2003) (stating that disclosures that are limited to EEO matters are not protected).  However, in analyzing her activity, the administrative judge did not address the appellant's statements regarding the union president's criminal activity or the other information from the AIB.  We find that the appellant's statements relating to criminal misconduct concern disclosures of a violation of criminal law and that the appellant made protected disclosures about the sexual assault, as detailed in the AIB report.[14]

¶20    The appellant reported that the union president sexually assaulted her in an interview by agency police in conjunction with an OIG and a police investigation, an affidavit to the AIB, and testimony before the AIB.  0592 IAF, Tab 17 at 22-30.  The AIB determined that the union president committed the criminal offense of sexual assault.  *Id*. at 29-30.  Accordingly, we find that she made a disclosure of the union president's violation of a law and that her disclosure was protected.[15]  *See Mastrullo*, 123 M.S.P.R. 110, ¶ 22 (finding that the appellant

---

[14] On April 8, 2015, prior to the issuance of the AIB report, the agency issued its final agency decision (FAD), finding that the appellant failed to prove her discrimination complaint.  0592 IAF, Tab 1, Tab 17 at 31.  The appellant appealed to the Equal Employment Opportunity Commission (EEOC) on May 11, 2015.  0592 IAF, Tab 17 at 31.  Although we have not considered the contents therein, we note that, while this petition for review was pending, the EEOC issued its November 29, 2017 decision finding no discrimination.  *Darlena H. v. Department of Veterans Affairs*, EEOC Appeal No. 0120151838, 2017 WL 6422312 (Nov. 29, 2017).

[15] The Board has held that participating in an AIB investigation does not constitute protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), in that it was not the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation, and thus the appellant's testimony before the AIB was not protected as testimony or other

made a protected disclosure that his coworker violated a law, rule, or regulation by criminally harassing him).

## The appellant's prior Board appeal and disclosure about the union president were contributing factors to her reassignment and removal.

¶21       To prove that a disclosure was a contributing factor in a personnel action, the appellant only need demonstrate that the fact of, or the content of, the protected disclosure was one of the factors that tended to affect a personnel action in any way. *See Mastrullo*, 123 M.S.P.R. 110, ¶ 18.  The knowledge/timing test allows an employee to demonstrate that the disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure, and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id.*; *see* 5 U.S.C. § 1221(e)(1).  Once the knowledge/timing test has been met, the appellant has shown that her whistleblowing was a contributing factor in the

lawful assistance under 5 U.S.C. § 2302(b)(9)(B).  *Graves*, 123 M.S.P.R. 434, ¶¶ 18-20.  Thus, the appellant's testimony before the AIB did not constitute protected activity under 5 U.S.C. § 2302(b)(9)(A)(i).  After the initial decision was issued, Congress passed section 1097(c)(1) of the National Defense Authorization Act for Fiscal Year 2018, Pub. L. No. 115-91, 131 Stat. 1283 (2017), which amended 5 U.S.C. § 2302(b)(9)(C) to provide protections for individuals who cooperate or disclose information to "any other component responsible for internal investigation or review."  However, as we found in *Edwards v. Department of Labor*, 2022 MSPB 9, ¶¶ 28-32, this statute is not retroactive.  Accordingly, we find that the appellant's participation in the AIB investigation did not constitute protected activity.

To the extent that the appellant is asserting retaliation for participation in an OIG investigation prior to the AIB investigation or that she was otherwise a perceived whistleblower, we decline to address these arguments because she is raising them for the first time on petition for review without showing that they are based on evidence previously unavailable despite her due diligence.  PFR File, Tab 1 at 5-6; *see Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 6 (2016).  Moreover, there is no evidence that the appellant ever raised these issues with OSC.  *See D'Elia v. Department of the Treasury*, 60 M.S.P.R. 226, 231 (1993), *overruled on other grounds by Thomas v. Department of the Treasury*, 77 M.S.P.R. 224 (1998), *overruled in part on other grounds by Ganski v. Department of the Treasury*, 86 M.S.P.R. 32 (2000).

personnel action at issue, even if, after a complete analysis of all of the evidence, a reasonable factfinder could not conclude that her whistleblowing was a contributing factor in the personnel action. *Mastrullo*, 123 M.S.P.R. 110, ¶ 18.

¶22 It is undisputed that a decision to reassign or remove the appellant constitutes a personnel action. 5 U.S.C. § 2302(a)(2)(A)(iii), (iv). Thus, the agency took two personnel actions against the appellant when it reassigned her and imposed her removal.

¶23 Further, we find that the deciding official and first proposing official knew about the appellant's prior Board appeal and disclosure about the union president before reassigning her and removing her. Both the deciding official and the first proposing official, who drafted the letter reassigning the appellant's duties, knew about the appellant's prior Board appeal because they both testified at the hearing in that appeal. 0055 ID. The deciding official also knew about the appellant's disclosures regarding the sexual assault, as he originally authorized the investigation of the incident and reviewed the AIB report, which described the disclosures, when he sent the letter to the union president. 0592 IAF, Tab 17 at 22, 32. We also find that the first proposing official knew about at least some of the appellant's disclosures that were used by the AIB as she engaged in mediation with the appellant about the sexual assault after she had been interviewed by the police about the incident.[16] 0592 IAF, Tab 15 at 4, Tab 17 at 9-11, 26.

¶24 The Board has held that personnel actions taken within 1 to 2 years of the protected disclosure satisfy the timing prong of the knowledge/timing test. *See, e.g.*, *Mastrullo*, 123 M.S.P.R. 110, ¶ 21. Even if the personnel actions have not occurred within this time period, the Board also may consider whether the

---

[16] We cannot determine conclusively whether the second proposing official knew about or had constructive knowledge of the disclosures and activity.

personnel actions flow from one another.  *See Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶ 22 (2013).

¶25        The appellant filed the prior Board appeal in September 2013, the administrative judge issued the initial decision in August 2014, and the Board issued its Final Order in January 2015.  0055 Final Order; 0055 ID; 0055 IAF, Tab 1.  Her disclosures regarding the assault began in April 2013 and culminated in the AIB's report in May 2014.  0592 IAF, Tab 17 at 22-30.  The appellant's reassignment occurred in May 2015 and she was removed in November 2015. 0592 IAF, Tab 6 at 12-15, 22.  Further, the appellant's reassignment and removal followed a previous removal that had been overturned on due process grounds. 0055 Final Order.  We note that the appellant's disclosures to the AIB, beginning in April 2013, and her Board appeal in September 2013, began slightly more than 2 years before the personnel actions at issue.  However, the disclosures continued through the AIB and Board appeal process and the disciplinary actions arose initially from the appellant's previous removal and the Board's order not sustaining the removal.  Accordingly, we find that, based on the time frame and the continuity of the disclosures and personnel actions, the appellant has demonstrated that her disclosures to the AIB and her previous Board appeal were a contributing factor to her removal.

We remand the appeal for an analysis of whether the agency proved by clear and convincing evidence that it would have removed the appellant absent her protected disclosure and activity.

¶26        To determine whether the agency proved by clear and convincing evidence that it would have removed the appellant absent her protected disclosure and activity, all evidence that supports the agency's case and detracts from it must be weighed together.  *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).  Because the administrative judge did not find that the appellant made a protected disclosure or engaged in protected activity that was a contributing factor to her removal, he did not reach the issue of whether the agency met its

burden. 0592 ID at 8-9. However, as discussed above, we find that she made a protected disclosure about the union president and engaged in protected activity by filing a prior Board appeal and that these were contributing factors in her removal. Therefore, the issue of the agency's burden must be adjudicated. We find that the administrative judge is in the best position to do so because he heard the live testimony in this case. *See Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 37 (2013). Accordingly, it is necessary to remand the appeal for the administrative judge to evaluate whether the agency proved by clear and convincing evidence that it would have removed the appellant absent her protected disclosure and activity. *See Mastrullo*, 123 M.S.P.R. 110, ¶ 22 (remanding the appeal for adjudication of whether the agency met its burden of proving by clear and convincing evidence that it would have failed to give the appellant a time-off award absent his disclosures, as he had proven on review that his disclosures about his coworker's harassment were a contributing factor in the agency's decision).

## ORDER

¶27      For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.


FOR THE BOARD:          /s/ for
                                     Jennifer Everling
                                     Acting Clerk of the Board

Washington, D.C.